UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
UNITED STATES OF AMERICA :
: CASE NO. 4:10-CR-00238
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 9]
DION M. WILLIAMS, :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Dion M. Williams moves the Court to suppress evidence found and statements made during an allegedly illegal search of a vehicle in which the Defendant was a passenger. [Doc. 9.] The United States of America opposes the motion. [Doc. 15.] On July 27, 2010, the Court held a suppression hearing. [Doc. 16.] For the reasons that follow, the Court **GRANTS** the Defendant's motion to suppress.

**I. Background**

In this case, the United States charges the Defendant with being a felon unlawfully in possession of a firearm, in violation of 18 U.S.C. 922(g). [Doc. 1.] The Government bases its charges on a May 12, 2010, arrest. On May 12, 2010, Aliesha Gillian ("Gillian") was driving a Dodge Durango. Defendant Dion Williams, Sr. ("Williams") and Dion ("DJ") Williams, Jr. were passengers in the vehicle. Gillian was driving the vehicle westbound on I-76 when one of the

-1-

Case No. 4:10-CR-00238
Gwin, J.

vehicle's tires blew out. [Doc. 9 at 2; Doc. 26 at 34. ] Gillian turned the car around so that it was headed eastbound, and then she pulled the car to the side of the road. [Doc. 9 at 2; Doc. 26 at 34.] Apparently, Gillian's vehicle did not have a spare tire. A friend of Gillian came to the scene and gave Gillian a ride back to Youngstown to pick up another car. [Doc. 9 at 2.] After Gillian left, Defendant Williams got into the driver's seat of the vehicle, and DJ moved to the front passenger's seat. [Doc. 26 at 35.]

At approximately 3:00 p.m., State Trooper Jeffrey Greene ("Greene") saw the disabled vehicle, and he pulled his cruiser behind it. [Doc. 15 at 1; Doc. 26 at 16.] Trooper Greene approached the driver's side of the Durango and asked Williams for identification. [Doc. 26 at 17.] When Greene relayed Williams's information to the dispatch, he learned that the Mahoning County Sheriff's Office had an outstanding warrant for Williams's arrest for a probation violation related to a traffic offense violation. [Doc. 26 at 17, 24.] While he was waiting to confirm whether he should arrest Williams, Greene walked back to the Durango. Greene testified that he then observed, through the open window of the Durango, a "chunk" of green plant matter "slightly smaller than a pinky fingernail" laying on the passenger side front floorboard. [Doc. 26 at 18-20.][1/] Greene testified that he retrieved the chunk from the vehicle and conducted a "NIC" test on it, which indicated that the substance was marijuana. [Doc. 26 at 19-20.][2/]

---

[1/] At the suppression hearing, William's son, DJ, offered testimony that conflicts with Trooper Greene's. According to DJ, when Trooper Greene came back to the Durango after running William's information through the system, Greene opened up both the driver- and passenger-side doors of the vehicle and looked under both seats. [Doc. 26 at 36.] DJ says that Trooper Greene did not discover the "chunk" until after Greene opened the front passenger-side door and reached under the seat. [Doc. 26 at 37.]

[2/] The government has offered neither the marijuana, nor any lab test results into evidence. Trooper Greene testified that after conducting the field test he discarded the marijuana because the chunk was so small that "there was not enough to be sent to the lab because of its contamination of being NIC tested." [Doc. 26 at 26.]

Case No. 4:10-CR-00238
Gwin, J.

Greene waited for another officer to arrive, confirmed from dispatch that Williams should be detained, and then secured Williams in the rear seat of his cruiser. [Doc. 26 at 21.] Greene asked DJ to exit the vehicle and proceeded to search it. [Doc. 26 at 22.] During the search, Greene found a Kel-tec .380 caliber pistol in the glove box of the Durango. [Doc. 26 at 22.] When Greene questioned Williams about the gun, Williams stated that the gun had previously belonged to his deceased brother, and that he had moved the gun to the vehicle to remove it from the house in which DJ lived. [Doc. 9-1.]

On June 2, 2010, a federal grand jury indicted the Defendant on one count of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g). [Doc. 1.] The Defendant now moves the Court to suppress the firearm seized during and the statements made following Trooper Greene's search of the vehicle, which Williams alleges violated his Fourth Amendment rights. [Doc. 9.]

## II. Legal Standard

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. Warrantless searches are presumptively unreasonable under the Fourth Amendment, "subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). One such exception is the so-called "plain view doctrine," under which police may seize an object without a warrant if they "are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *Id.* at 375. "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object – i.e., if 'its incriminating character [is not] immediately apparent,'– the plain-view doctrine cannot justify its seizure." *Id.*

Case No. 4:10-CR-00238
Gwin, J.

(quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

Moreover, under the "automobile exception" to the Fourth Amendment, if an officer has probable cause to believe that a vehicle contains evidence of criminal activity, he may conduct a warrantless search of any area of the vehicle in which that evidence might be found. *Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009); *United States v. Ross*, 456 U.S. 798, 820-21 (1982). An officer's observation of objects that are clearly contraband in plain view inside a vehicle can establish probable cause to search the vehicle. *Colorado v. Bannister*, 449 U.S. 1, 4 (1980).

### III. Analysis

In his motion, Williams says that the seizure of the gun violated the Fourth Amendment since Greene lacked probable cause to search the Durango.[3/] [Doc. 9.] The Government argues that, based on the marijuana seized, Greene had probable cause to believe that the vehicle contained contraband, and thus under *Ross* and *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986), Greene could lawfully search any area of the vehicle that might contain contraband. [Doc. 15 at 2-4.] The parties do not dispute that probable cause for the search, if it existed, derived from Trooper Greene's alleged discovery of marijuana in the vehicle. Accordingly, if Greene's seizure of the material from the floorboard of the Durango was unjustified, the seized firearm and the Defendant's later incriminating statements must be suppressed as the fruits of an unlawful search. *See Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963).

The Government argues that Trooper Greene's seizure of the marijuana was lawful because the "chunk" was in plain view of Greene through the window of the Durango when he was standing

---

[3/] At the suppression hearing and in his supplemental memorandum in support of his motion to suppress, Williams further argues that the automobile exception to the warrant requirement is inapplicable here because the Durango was "immobile." [Doc. 26 at 11-13; Doc. 24 at 7-8.] The Court finds this argument unavailing based on the underlying rationales for that exception. *See California v. Carney*, 471 U.S. 386, 391-94 (1985); *United States v. Rommann*, 902 F.2d 1570 (Table), 1990 WL 66823, at *2-3 (6th Cir. May 21, 1990).

-4-

Case No. 4:10-CR-00238
Gwin, J.

outside the vehicle. [Doc. 15 at 3; Doc. 26 at 19.] However, for the seizure of an object to be justified under the plain view doctrine, in addition to the object's being in "plain view," its incriminating character must also be "immediately apparent," and the officer must have a lawful right of access to the object itself. *Horton*, 496 U.S. at 139. "'[W]hen an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating.'" *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002) (quoting *United States v. Byrd*, 211 F.3d 1270, 2000 WL 491511, at *3 (6th Cir. April 18, 2000)).

Trooper Greene testified that he was standing outside the car with the door closed looking inside when he observed the "chunk." [Doc. 26 at 25.] He further testified that the "chunk" was "slightly smaller than [a] pinky fingernail." [Doc. 26 at 20.] Other testimony showed the interior of the vehicle was messy with torn carpeting and that discarded items were scattered throughout the car. [Exhibit DX3.] The Court finds that from Trooper Greene's vantage point, standing outside of a sport utility vehicle with the door closed and peering in through the window into a messy vehicle, the incriminating character of a fingernail-sized piece of plant matter could not be "immediately apparent." From the distance of a few feet it would be impossible for even an experienced officer to determine that a "chunk" of plant matter on the floorboard of a vehicle only a few millimeters in size was in fact marijuana, and not a piece of soil, grass, or other material.

Because the incriminating nature of the "chunk" could not have been immediately apparent to Greene at the time it was in his "plain view," Greene did not have the authority to seize it under the plain view exception. *See McLevain*, 310 F.3d at 442 (reversing trial court's denial of motion to suppress because incriminating nature of a twist tie, a cigarette filter, a spoon with residue, and

Case No. 4:10-CR-00238
Gwin, J.

a bottle, which experienced officers believed to be associated with methamphetamine use, was not immediately apparent); *see also Arizona v. Hicks*, 480 U.S. 321, 324-26 (1987) (police, whose entry into home was premised on exigent circumstances related to gunfire, violated Fourth Amendment by moving stereo to read and record its serial numbers because moving stereo was "unrelated to the objectives of the authorized intrusion," and incriminating character of stereo was not immediately apparent).[4/]

Since Trooper Greene's seizure of the chunk from the floor of the Durango does not fall within the "plain view" exception to the warrant requirement, Greene lacked the probable cause to justify a full search of the vehicle pursuant to the automobile exception. Accordingly, the Court grants the Defendant's motion to suppress both the firearm found during the illegal search and the statements made by the Defendant following that search.

---

[4/] While other courts have upheld vehicle searches based upon an initial observation of marijuana residue in "plain view," these cases are readily distinguishable. In *United States v. Booker*, 269 F.3d 930, 931 (8th Cir. 2001), the police officer observed marijuana residue on the passenger side of an SUV after the defendant, who was standing outside the vehicle with the officer, opened the passenger door to retrieve some paperwork. The Eighth Circuit upheld the district court's denial of the defendant's motion to suppress, holding that the district court's crediting of the testimony of the officer that he observed cannabis and application of the plain view doctrine were not clearly erroneous. *Id.* at 932. Similarly, in *United States v. Hutchinson*, 471 F. Supp. 2d 497, 499 (M.D. Pa. 2007), the officer testified that he observed marijuana debris or residue on the front seat through the open door while the defendant was exiting the vehicle. In this case however, Trooper Greene testified that he did not open the passenger door prior to seeing what he believed to be marijuana residue on the floor of the Durango. Instead, he says, he observed the "fingernail"-sized "chunk" through the open window of the SUV, while DJ Williams was still seated in the passenger seat.

Moreover, in *Hutchinson*, the Court explicitly "decline[d] to uphold [the officer's] search of the vehicle exclusively on the basis of [the officer's] testimony that he observed marijuana debris." 471 F. Supp. 2d. at 504. In that case, the officer "did not proceed to conduct a full-blown search of the vehicle based solely on his observation of debris on the front seat, but instead elected to retrieve his drug-detecting canine to conduct a sniff of the vehicle's exterior." *Id.* The court thus upheld the subsequent search of the vehicle based not on the officer's initial observation of what he believed to be marijuana debris, but based upon the dog's alert to what he perceived to be contraband. *Id.*

Case No. 4:10-CR-00238
Gwin, J.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to suppress.
[Doc. 9.]

    IT IS SO ORDERED.


Dated: August 27, 2010            s/     *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE